UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| EDWARD E. FORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-224-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| MS. S. SUMMERS, Nurse, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Inmate/Plaintiff Edward Ford is presently confined at the United States Penitentiary-Allenwood in White Deer, Pennsylvania. Proceeding without an attorney, Ford filed a civil rights action in which he alleges that he was denied proper medical treatment while confined at United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. [Record No. 1, 20] Defendant United States has filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment. [Record No. 28] The matter has been fully briefed and is ripe for review.

I.

Ford alleges in his First Amended Complaint that he developed necrotizing fasciitis in December 2015 while housed at USP-McCreary and was denied proper medical treatment and care, resulting in permanent damage. [Record No. 20 at p. 2; 28-2 at p. 2] Specifically, he claims that, on December 11, 2015, he had a medical appointment to see Mid-Level Provider Elizabeth Barnes, PA-C, at Health Services about his diabetes, high

-1-

A1C levels, and high blood pressure. Ford informed Barnes during this appointment that he had a bump on his buttock that was causing a lot of pain and discomfort. [Record No. 20 at p. 3] Although he alleges that Barnes never physically examined him nor prescribed any medication, the United States has submitted evidence that Barnes examined Ford as a result of his complaints. According to the United States, Ford stated during the examination that he had no pain and, although the examination did not disclose chills or fever, sores and eruptions in the skin and lesions in the buttock were found and hardness beneath the skin was noted. Ford was assessed with cellulitis/abscess and was provided with Sulfamethoxazole/Trimeth (brand name Bacrtim), a combination used to treat infections. The medication was prescribed to be used two times a day for 10 days for the skin infection. A follow-up examination was scheduled for approximately two weeks later after the completion of the antibiotic therapy. [Record No. 28-2 at p. 2, 8-10] Ford labels this evidence as an "erroneous factual conclusion" [Record No. 30 at p. 5], but cites to no evidence to support this claim or to otherwise contradict the information submitted by the United States. Instead, consistent with this evidence, Ford alleges in his First Amended Complaint that Barnes recommended that he treat the bump with warm water and over-the-counter medication. [Record No. 20 at p. 3]

Ford further asserts that, on December 12, 2015, the bump burst and he attempted to go back to medical for treatment. However, Defendant Summers allegedly told him to go back to his unit. [*Id*.] Ford claims that he returned to medical on December 14, 2015, but was turned away by Defendant Nurse Free, despite Ford's statements that he was in pain. [*Id*. at p. 3-4] Ford alleges that he returned to medical for the third time on December

15, 2015, in an attempt to receive further treatment but was again told again to return to his unit by Summers, despite his continuing claims of intense pain. He asserts that he then approached AHSA Crimarossa and explained the bump and intense pain, as well as his failed attempts to see his PA or a doctor. [Record No. 20 at p. 4] Ford contends that Crimarossa took him back to medical, but that when Summers saw him, she "got a really bad attitude with me" and took Crimarossa in the back to talk, after which Crimarossa returned and told him to leave medical and return to his unit. [*Id*.]

Ford asserts that other inmates helped him return to medical against on December 16, 2015, where he was seen by Nurse Morrow. [Record No. 20 at p. 4-5] After Ford showed Morrow his buttock, Morrow consulted with J. West, who made arrangements to send Ford to Lake Cumberland Regional Hospital, where Ford underwent surgery. [*Id*. at p. 5] Ford alleges that, as a result of the negligence of the staff at USP-McCreary, he suffered personal injury, including necrotizing fasciitis, for which he had to undergo life-saving surgery. As a result, he claims that now suffers permanent damage, including the loss of both buttocks, the loss of his anus, lung damage, and the loss of 10 inches of intestines. [*Id*. at p. 5] He also asserts that he will be required to use a colostomy bag for the remainder of his life. [*Id*.]

## II.

Before addressing the merits of the United States' motion, the Court must first clarify the claims that are currently pending. Ford originally filed his Complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), naming as Defendants "Ms. Summers, Nurse," "Ms. Free, Nurse," "Ms. Crimarossa, AHSP,"

Associate Warden Barron and Warden Holland. He asserted claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. [Record No. 1 at 5] Although the exact nature of Ford's claim was unclear, the Court construed it under *Bivens*, dismissed the prison officials as defendants, and directed the United States Marshals Service to serve the medical provider defendants. [Record No. 12]

Thereafter, Ford filed a First Amended Complaint which named only the United States as a Defendant. [Record No. 20] Ford explained in the introductory paragraph of his First Amended Complaint that he seeks leave to amend his initial complaint to a federal tort claim action ("FTCA") under 28 U.S.C. § 1346(b), 28 U.S.C. § 2671-2680 *et seq*. [*Id*.] In addition to removing the individual medical providers as defendants, Ford's First Amended Complaint also removed his prior request for punitive damages which are unavailable in an FTCA action. [*Id*. at p. 6] The Court granted Ford's motion for leave to amend his complaint and directed that the First Amended Complaint be served on the United States. [Record No. 22]

In its motion to dismiss or for summary judgment, the United States correctly notes that "[a]n amended complaint supersedes an earlier complaint for all purposes." [Record No. 28-1 at p. 2, FN2, quoting *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013)] Accordingly, the government interprets the language in the First Amended Complaint (i.e., that Ford seeks to amend his complaint *from* a *Bivens* action *to* a claim under the FTCA) as a statement of intention to completely replace his previously-asserted *Bivens* claims and only pursue a claim under the FTCA. [*Id*.] Ford does not

disagree with this interpretation of his First Amended Complaint. In fact, he refers to his claims as "negligent/Tort Claims Actions," not constitutional actions. [Record No. 30 at p. 5]

As a result of the foregoing, the Court agrees that Ford's First Amended Complaint supersedes his original Complaint. Thus, the claim pending before the Court is construed as an FTCA claim against the United States and not a *Bivens* claim against the individual medical providers that were previously named as Defendants. Therefore, as a matter of clarification, the Court will dismiss Ford's original Complaint asserting *Bivens* claims against individual defendants without prejudice.

### III.

The United States has moved to dismiss the Amended Complaint under Rule 12(b)(6) and has also moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In seeking this relief, the government has attached and is relying upon declarations extrinsic to the pleadings. [Record No. 28] As a result, the Court will treat the motion under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010); s*ee also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, the plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-

sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994). However, if a responding party's allegations are clearly contradicted by the record such that that a reasonable jury could not adopt them, the court need not accept them when determining whether summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### IV.

The FTCA is a limited waiver of sovereign immunity which permits an action against the United States for negligent or wrongful acts or omissions of its employees while acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1). *See also Fitch v. United States,* 513 F.2d 1013, 1015 (6th Cir.1975); *United States v. Orleans,* 425 U.S. 807, 813 (1975). The FTCA is the exclusive remedy for tort actions against the federal government, its agencies, and its employees. 28 U.S.C. § 2679. The United States seeks summary judgment because Ford's FTCA claim is time-barred. In short, the government asserts that he did not file this action within six months of the BOP's denial of his administrative claim. [Record No. 28-1]

A plaintiff must exhaust administrative remedies prior to adjudicating an FTCA claim in federal court. *Garzon v. Luttrell*, 24 Fed.Appx. 400, 402 (6th Cir. 2001). The

FTCA also contains its own statute of limitations, which provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C.A. § 2401.

The BOP Consolidated Legal Center ("CLC") sent a notice of final denial of Ford's administrative tort claim with respect to his December 2015 medical treatment by letter dated May 10, 2017. [Record No. 20-2] This letter also notified Ford that he may file suit with respect to his tort claim no less than six months from the date of that letter. [*Id*. at p. 2] Pursuant to this notice, Ford was required to file his FTCA lawsuit by approximately November 10, 2017. And while Ford filed his original Complaint asserting *Bivens* claims on August 15, 2017 [Record No. 1], he did not file his First Amended Complaint indicating his intent to bring an FTCA action until November 16, 2017, and it was not served on the United States until December 4, 2017. [Record No. 20, 26] The United States argues that Ford's First Amended Complaint asserting his FTCA claim does not relate back to his original complaint for statute of limitations purposes and must be dismissed as untimely.

"Under Federal Rule of Civil Procedure 15(c)(1)(C), a change of 'party or the naming of [a] party against whom a claim is asserted' relates back to the original complaint if the claim arose out of the same conduct, transaction, or occurrence set out in the original complaint, and if, within the Rule 4(m) period for serving the summons and complaint, 'the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the

-7-

action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Goodwin v. Summit Cty.*, 703 F. App'x 379, 383-84 (6th Cir. 2017)(quoting Rule 15(c)(1)). Here, Ford did not seek to substitute the United States as a Defendant to his original *Bivens* claim, but rather sought to add a completely new claim against a completely new defendant. Thus, Ford's First Amended Complaint does not relate back to the original filing date for limitations purposes. It names a new party as a defendant and creates a new cause of action. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'") (quoting *In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449 (6th Cir.1991). *See also In re Biozoom, Inc. Sec. Litig.*, 93 F. Supp. 3d 801, 812 (N.D. Ohio 2015) ("Under Sixth Circuit law, Rule 15(c) only permits the substitution of plaintiffs or defendants, not the addition of them."). Accordingly, Ford's First Amended Complaint seeking to pursue an FTCA claim against the United States is untimely.

## V.

Ford asks the Court to exercise its discretion in applying the doctrine of equitable tolling and deem his FTCA claim as timely-filed. He claims that, although he was attempting to diligently pursue his claims, his lack of training in the law and limited access to a law library contributed to his failure to timely file his FTCA claim. [Record No. 30 at p. 3-4] But assuming, without deciding, that equitable tolling should be applied in these

circumstances, Ford's claim nonetheless fails on the merits as he has failed to establish a prima facie case of medical negligence under Kentucky law.

As noted previously, the FTCA constitutes a limited waiver of the United States' sovereign immunity for claims based upon "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b); *Matthews v. Robinson*, 52 F. App'x 808 (6th Cir. 2002). The law of the state where the relevant conduct occurred determines the existence and scope of the United States' liability. *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957). Ford contends that the medical care he received from health care professionals employed by the United States fell below the applicable standard of care in Kentucky. Thus, the Court looks to Kentucky negligence law to determine whether Ford has presented the essential components of his claim.

Kentucky common law requires that a plaintiff prove that the given treatment fell below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused the plaintiff's injury or death. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982). But negligence is never presumed "from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results, or because of the appearance of infection." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006). Instead, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id*. (citing *Turner v. Reynolds*, 559 S.W.2d

740, 741-42 (Ky. App. 1977)); *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2012) ("[A] plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury.").

Kentucky permits a plaintiff to provide evidence of the applicable standard of care from expert opinion, defendant's admissions during discovery, or medical evidence obtained from other treating physicians. *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)). However, Ford has failed to provide any expert testimony or any cite to any other evidence to support his claim that the medical care provided to him fell below the applicable standard of care and caused his injuries. Therefore, he has failed to establish a prima facie case of medical negligence under Kentucky law. *Matthews*, 52 F. App'x at 810; *Andrew*, 203 S.W.3d at 170; see also *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) ("It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony.").

In response to a motion for summary judgment, Ford has an obligation – but has failed – to "come forward with some probative evidence to support [his] claim." *Lansing Dairy, Inc.*, 39 F.3d at 1347. Accordingly, the United States' motion will be granted.

### V.

For the reasons outlined above, it is hereby

-10-

**ORDERED** as follows:

1. The United States' motion for summary judgment [Record No. 28] is **GRANTED**. Because summary judgment disposes of the issues presented, the corresponding motion to dismiss [Record No. 28] will not be addressed on the merits and will be **DENIED**, without prejudice, as moot.

2. Ford's original Complaint [Record No. 1] is **DISMISSED** without prejudice.

3. Ford's First Amended Complaint [Record No. 20] is **DISMISSED** with prejudice.

4. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 1st day of May, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge